Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.Z. by and through her parents and
guardians, E.Z. and D.Z., individually, and on
behalf of the JUNO THERAPEUTICS, INC.
HEALTH BENEFIT PLAN, and on behalf of
similarly situated individuals and plans,

          Plaintiff,

    v.

REGENCE BLUESHIELD; and CAMBIA
HEALTH SOLUTIONS, INC.,
f/k/a THE REGENCE GROUP,

          Defendants.

NO.  2:17-cv-01292-TSZ

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS**

**Noted for Consideration:**
  **November 10, 2017**

Sirianni Youtz
Spoonemore Hamburger
701 Fifth Avenue, Suite 2560
Seattle, Washington  98104
Tel. (206) 223-0303   Fax (206) 223-0246

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. FACTS ....................................................................................................................3

    A. A.Z. Required Mental Health Treatment. .......................................................3

    B. Regence Claims that "Wildness Programs are a Specific
    Exclusion." ........................................................................................................3

        1. Regence Denies Coverage Because Evoke is a
        "Wilderness Program." .........................................................................3

        2. Regence Denies the First Appeal Because "[t]he
        participation in a wilderness program ... is an
        exclusion of your health plan." ...........................................................4

        3. A.Z. Appeals, and Regence Denies the Appeal
        Because Services were Rendered in a "Wilderness
        Therapy Program." ...............................................................................4

III. LAW AND ARGUMENT ......................................................................................5

    A. FRCP 12(b) Standards. ....................................................................................5

        1. The Court May Consider the Denial and Appeal
        Letters. ..................................................................................................6

        2. Regence May Not Raise Reasons for Denial that
        Were Not Set Forth in the Administrative Appeal
        Process. .................................................................................................6

    B. Regence Violated the Plan by Excluding Services for
    Documented Illnesses Under an Exclusion for
    "Counseling in the Absence of Illness." ..........................................................7

        1. A.Z.'s Treatment for Depression at Evoke is a
        "Covered Service." ...............................................................................7

        2. Regence Excludes Services at Wilderness Programs,
        Even When Those Services Are Medically Necessary
        to Treat an Illness..................................................................................9

        3. The Plain Language of the Plan Requires Coverage. ...........................10

            a. First Prong:  The Exclusion Only Applies to
            Counseling............................................................................10

            b. Second Prong:  The Program Is Not Rendered
            "in the Absence of Illness." .................................................11

c.   Third Prong: The Program is Expressly
Described as a Covered Service.........................................12

4.   Any Ambiguity Must Be Construed Against
Regence. .................................................................13

5.   The Insured's Reasonable Expectations Also
Requires Coverage. .....................................................13

C.   Regence Violated the Parity Act by Imposing a Blanket
Exclusion on a Wildness Programs.............................................14

1.   Because the Parity Act Examines How a Treatment
Limitation is Actually Applied, the Relevant
Limitation Is Regence's Blanket Exclusion of
Wilderness Programs.....................................................16

2.   Regence Is Required to Classify Wilderness
Programs in the Same Category as Residential
Treatment Centers. ......................................................17

3.   Because Regence Covers Medical and Surgical
Services Rendered at Skilled Nursing Facilities and
Rehabilitation Hospitals, It Cannot Exclude Mental
Health Care Provided in Residential Wilderness
Facilities. .................................................................18

D.   Regence's Exclusion of Wilderness Programs Violated the
ACA. ...........................................................................21

E.   Plaintiff A.Z. Need Not Plead Plan Losses to Support Her
Claims.........................................................................22

F.   Plaintiff A.Z. Is Not Seeking Prospective Remedies........................23

IV.   CONCLUSION ........................................................................24

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

# TABLE OF AUTHORITIES

## CASES

*A.A. v. Blue Cross & Blue Shield*,
  2014 U.S. Dist. LEXIS 29986 (W.D. Wash. March 7, 2014) ........................................ 12

*A.F. v. Providence Health Plan*,
  35 F. Supp. 3d 1298 (D. Or. 2014) ........................................................................... 16, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 5

*Association of New Jersey Chiropractors Inc. v.
  Horizon Healthcare Servs., Inc.*,
  2017 U.S. Dist. LEXIS 90545 (D.N.J. June 13, 2017) ...................................................... 22

*Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*,
  379 F.3d 557 (9th Cir. 2004) .................................................................................... 12

*Barker v. Am. Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) .................................................................................... 23

*Blankenship v. Liberty Life Assur. Co.*,
  486 F.3d 620 (9th Cir. 2007) .................................................................................... 13

*Booton v. Lockheed Medical Benefits Plan*,
  110 F.3d 1461 (9th Cir. 1997) .................................................................................... 7

*Carr v. United Healthcare Servs.*,
  2016 U.S. Dist. LEXIS 182561 (W.D. Wash. May 31, 2016) ........................................... 10

*Cigna Corp. v. Amara*,
  131 S. Ct. 1866 (2011) ............................................................................................. 23

*Cisneros v. Unum Life Ins. Co.*,
  134 F.3d 939 (9th Cir. 1998) .................................................................................... 16

*Cohen v. Blue Cross Blue Shield*,
  2012 U.S. Dist. LEXIS 50817 (D.N.J. April 11, 2012) .................................................... 6

*Craft v. Health Care Serv. Corp.*,
  84 F. Supp.3d 748 (N.D. Ill. 2015) ............................................................................ 20

*Dominion Pathology Labs, P.C. v. Anthem Health Plans of Virginia, Inc.*,
  111 F. Supp. 3d 731 (E.D. Va. 2015) ........................................................................ 22

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

*Ellis v. Liberty Life Assurance Co. of Bos.,*
  394 F.3d 262 (5th Cir. 2004) .................................................................. 12

*Halpin v. W.W. Grainger, Inc.,*
  962 F.2d 685 (9th Cir. 1992) ..................................................................... 7

*Harlick v. Blue Shield of Cal.,*
  686 F.3d 699 (9th Cir. 2012) ..................................................................... 7

*Hartford Elec. Light Co. v. Fed. Power Com.,*
  131 F.2d 953 (2d Cir. 1942) ...................................................................... 8

*Henry v. Home Ins. Co.,*
  907 F. Supp. 1392 (C.D. Cal. 1995) ........................................................ 14

*J.T. v. Regence BlueShield,*
  291 F.R.D. 601 (W.D. Wash. 2013) ......................................................... 23

*Jebian v. Hewlett-Packard Co., Employee Benefits Org. Income Prot. Plan,*
  349 F.3d 1098 (9th Cir. 2003) ................................................................... 7

*Joseph & Gail F. v. Sinclair Servs. Co.,*
  158 F. Supp. 3d 1239 (D. Utah 2016) ............................................... 17, 20

*L.A. Lakers, Inc., v. Fed. Ins. Co.,*
  869 F.3d 795 (9th Cir. 2017) ..................................................................... 6

*Lancaster v. United States Shoe Corp.,*
  934 F. Supp. 1137 (N.D. Cal. 1996) ........................................................ 13

*Mashak v. Poelker,*
  367 S.W.2d 625 (Mo. 1963) ...................................................................... 8

*McClure v. Life Ins. Co. of N. Am.,*
  84 F.3d 1129 (9th Cir. 1996) ................................................................... 14

*Mendoza v. Zirkle Fruit Co.,*
  301 F.3d 1163 (9th Cir. 2002) ................................................................... 5

*Mitchell v. CB Richard Ellis Long Term Disability Plan,*
  611 F.3d 1192 (9th Cir. 2010) ................................................................... 7

*Nieves v. Prudential Ins. Co. of Am.,*
  233 F. Supp. 3d 755 (D. Ariz. 2017) ......................................................... 7

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – v

*O.S.T. v. Regence BlueShield,*
   181 Wn.2d 691 (2014) ..............................................................................4

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ..................................................................6

*Saltarelli v. Bob Baker Group Medical Trust,*
   35 F.3d 382 (9th Cir. 1994) ...........................................................13, 14

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund,*
   332 F.3d 1198 (9th Cir. 2003) ......................................................22, 23

*Skinner v. Northrop Grumman,*
   673 F.3d 1162 (9th Cir. 2012) ..............................................................23

*Steger v. Delta Airlines, Inc.,*
   382 F. Supp. 2d 382 (E.D. N.Y. 2005) ................................................6

*Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.,*
   852 F.3d 105 (1st Cir. 2017) ................................................................17

*Tibble v. Edison Intern.,*
   639 F. Supp. 2d 1074 (C.D. Cal. 2009) ..............................................22

*UNUM Life Ins. v. Ward,*
   526 U.S. 358, 119 S. Ct. 1380 (1999 ..................................................16

*Welp v. Cigna Health & Life Ins. Co., 17-cv-80237,*
   2017 U.S. Dist. Lexis 113719 (S.D. Fla. July 20, 2017) ....................10

*Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,*
   222 F.3d 643 (9th Cir. 2000) ................................................................16

*Wit v. United Behavioral Health,*
   2017 U.S. Dist. LEXIS 1290 (N. D. Cal. August 14, 2017) ..............23

*Z.D. v. Grp. Health Coop.,*
   829 F. Supp. 2d 1009 (W.D. Wash. 2011) ....................................21, 23

### STATUTES

29 U.S.C. § 1104(a)(1) .............................................................................21

29 U.S.C. § 1132(a)(2) .............................................................................22

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

29 U.S.C. § 1132(a)(3) ................................................................................16, 22

29 U.S.C. § 1185a(a)(3)(A) ...............................................................................16

29 U.S.C. § 1185a(a)(3)(A)(ii) ....................................................................15, 17

29 U.S.C. § 1185d .........................................................................................3, 21

42 U.S.C. § 300gg-5(a) .................................................................................3, 21

42 U.S.C. § 300gg-91(a) ...................................................................................21

ORS § 418.205(6)(a) .........................................................................................11

ORS 418.205(6)(a) .............................................................................................3

ORS 418.205-.327 ..............................................................................................3

RCW 18.19.020(6) ............................................................................................10

## REGULATIONS

29 C.F.R. § 2590.712(c)(2)(i))(A) ....................................................................16

29 C.F.R. § 2590.712(c)(2)(ii)(A) .....................................................................17

29 C.F.R. § 2590.712(c)(4) ...............................................................................19

29 C.F.R. § 2590.712(c)(4)(i) ...........................................................................16

29 C.F.R. § 2590.712(c)(4)(ii) .....................................................................18, 19

29 C.F.R. § 2590.712(c)(iv)(2) ..........................................................................16

75 Fed. Reg. at 5412 .........................................................................................17

75 Fed. Reg. at 5413 ....................................................................................16, 17

75 Fed. Reg. at 5416 .........................................................................................16

78 Fed. Reg. 68240 ................................................................................17, 19, 20

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

## I.   INTRODUCTION

Regence denied A.Z.'s treatment for depression at a licensed wilderness facility for **one reason**: Regence claimed that A.Z.'s plan excluded all "wilderness programs." Declaration of Richard E. Spoonemore, *Ex. A* ("The participation in a wilderness program is not subject to preauthorization or eligible for benefits as it is an exclusion of your plan."); *Ex. B* ("According to the terms of your health care plan, wilderness programs are not covered.") and *Ex. D* ("Your contract specifically excludes wilderness therapy programs from coverage.").  This is a blanket exclusion. If Regence classified treatment as a "wilderness program," then it was automatically excluded irrespective of its medical necessity.  *Ex. B* ("Please note, this is not a determination of medical necessity; rather, this is a limitation of your health care contract."); *Ex. D* ("Our decision was made based only on your contract language, so did not consider medical necessity criteria.").

In a radical departure from its uniform denials during the ERISA administrative process, Regence's litigation position is that it actually has no blanket exclusion for wilderness programs.  Dkt. No. 15, p. 1, lns. 11-14 ("Plaintiff ignores the Plan terms by alleging there is a standalone 'blanket exclusion' for 'outdoor/wilderness behavioral health care programs' seeks to have that non-existent exclusion invalidated as a violation of the Parity Act."); p. 10, lns. 14-16 ("The Complaint asserts the Plan excludes 'all coverage for outdoor/wilderness behavioral healthcare programs.' [citation omitted] No exclusion is quoted from the Plan because that exclusion does not exist."); p. 10, lns. 15-16 ("… that exclusion does not exist.").  Regence, in its brief, actually admits that the Plan "expressly" provides coverage for residential care for mental health conditions "***in any setting***."  Dkt. No. 15, p. 14, lns. 19-20 (emphasis added).  Yet it still maintains, for some unexplained reason, that A.Z. is not entitled to coverage.

Given Regence's admissions, this case can, and should, be adjudicated on the plain language of the Plan.  The criteria in the exclusion that Regence relied upon to deny

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

coverage for wilderness programs to A.Z. and others – "Counseling in the Absence of Illness" – has three independent components:  (1) it only excludes "counseling"; and then only (2) "in the absence of illness" if (3) the service is not "expressly described" elsewhere as a covered service.  Dkt. No. 16, p. 59 of 98 ("Services for counseling in the absence of illness, not expressly described in this plan as a Covered Service, will not be covered.").  *None* of the criteria for exclusion exist here:

(1) The services sought are not "counseling" services; they are an organized program providing mental health services in a wilderness facility licensed by the State of Oregon to provide mental health care.

(2) They are not provided "in the absence of illness."  A.Z has an illness, depression, a fact that Regence admits. Dkt. No. 15, p. 11, n. 6 ("This is not to say that the individual seeking such service does not have an illness.  A.Z. did have a diagnosis ….").

(3) Finally, the services are "expressly described in [the] plan as a Covered Service," another fact that Regence admits.  Dkt. No. 15, p. 14, lns. 19-20 ("The Plan *expressly* <u>covers</u> Residential Care for mental health conditions *in any setting*.") (underline in original, bold, italic supplied).

Regence wrongfully denied benefits and breached its fiduciary duty by imposing a "non-existent" blanket exclusion upon its insureds with documented mental illnesses who needed treatment at an outdoor facility licensed to provide mental health care.

While this case can – and should – be decided based upon the plain language of the Plan, Regence also violates the federal Mental Health Parity Act by imposing a blanket exclusion on all wilderness programs.   Under the Parity Act and its implementing regulations, an insurer cannot apply a blanket exclusion on mental health care services unless a similar exclusion is applied to predominantly all comparable medical/surgical services.   Under the governing regulations, intermediate programs such as wilderness programs are in the same classification as residential treatment centers.   Regence provides full coverage for medical/surgical conditions at skilled nursing facilities and rehabilitation hospitals, but excludes mental health care rendered

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 2

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

at a wilderness facility. Under the Final Rules interpreting the Parity Act, this is a violation of the law. In addition, under the Affordable Care Act's provider anti-discrimination provision, Regence cannot exclude from coverage all licensed providers of wilderness therapy when they provide otherwise covered services within their scope of practice. 42 U.S.C. § 300gg-5(a); 29 U.S.C. § 1185d.

## II. FACTS

**A.    A.Z. Required Mental Health Treatment.**

Plaintiff A.Z., the 16-year old daughter of E.Z. and D.Z., was a beneficiary under a health insurance plan sponsored by Juno Therapeutics and fully insured by Regence. Dkt. No. 1, ¶¶1, 3. A.Z. was diagnosed with depression, a DSV-IV defined mental illness. *Id.*, ¶16. In 2016, A.Z.'s depression deteriorated such that it required treatment at a licensed outdoor/wilderness behavioral healthcare program. Dkt. No. 1, ¶16. Specifically, her doctors recommended that she receive behavioral health treatment for her depression at Evoke Cascades, an outdoor mental health program in Oregon. Dkt. No. 1, ¶16; *Ex. C*, p. 7. Evoke is licensed as an "outdoor youth program" by the State of Oregon. *Ex. 9 to Ex. C.* As an outdoor youth program, Evoke is statutorily authorized to provide an organized program of mental health services to youths ages 13-17 years in an outdoor setting. *See* ORS 418.205(6)(a) ("'Outdoor youth program' means *a program* that provides, in *an outdoor living setting*, services to children who have behavioral problems, *mental health problems* or problems with abuse of alcohol or drugs.") (emphasis added); *see generally* ORS 418.205-.327.

**B.    Regence Claims that "Wildness Programs are a Specific Exclusion."**

**1.    Regence Denies Coverage Because Evoke is a "Wilderness Program."**

A request for preauthorization was submitted to Regence in early September of 2016. On September 9, 2016, Regence denied preauthorization because "[t]he participation in a wilderness program is not subject to preauthorization or eligible for

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 3

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303    FAX (206) 223-0246

benefits as it is an exclusion of your health plan." *Ex. A.* Regence did not address the question of whether the proposed treatment at Evoke was medically necessary for A.Z., or whether it was being provided "in the absence of illness." *Id.* It did, however, properly recognize that the proposed program was "residential treatment." *Id.*

### 2.  Regence Denies the First Appeal Because "[t]he participation in a wilderness program ... is an exclusion of your health plan."

Unable to delay treatment, A.Z. began treatment at Evoke on September 6, 2016, and appealed the denial of coverage. On October 16, 2016, Regence denied A.Z.'s level one appeal, claiming that "wilderness therapy" was a blanket exclusion:

> According to the terms of your health care plan, wilderness programs are not covered. Please note, this is not a determination of medical necessity; rather, this is a limitation of your health care contract. As a result, the request to cover a wilderness program for [A.Z.] cannot be permitted.

*Ex. B. See O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 704 (2014) ("blanket exclusion" means "that the plans exclude therapies regardless of whether they are medically necessary."). Like the original denial, Regence never examined whether the treatment was medically necessary, nor did Regence consider whether it was being provided "in the absence of illness." *Ex. B.*

### 3.  A.Z. Appeals, and Regence Denies the Appeal Because Services were Rendered in a "Wilderness Therapy Program."

A.Z. appealed again. *Ex. C.* Her appeal letter explained that given A.Z.'s diagnosis of depression, "[t]he intermediate outdoor behavioral health treatment [A.Z.] received at Evoke was ***not*** a method of counseling for the 'absence of illness.'" *Id.*, p. 2 (emphasis in original). The appeal showed that Evoke had a Certification of Behavioral Health Treatment Services from the Oregon Health Authority and was licensed by Oregon to provide the mental health services received by A.Z. *Id.*, p. 7, *Exs. 8, 9.*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 4

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Ignoring the fact that A.Z. actually had a documented mental illness that was being treated in an organized program by a licensed provider, Regence again denied coverage because her treatment was rendered in a "wilderness program":

> We regret to inform you that your appeal has been denied. We made this choice because:
>
> *Your contract specifically excludes wilderness therapy programs from coverage*. While your appeal states you were receiving intermediate outdoor behavioral youth treatment, the program details (including their marketing material) best fits the definition of a wilderness therapy program. Therefore, the panel determined that your request for this treatment was correctly denied per the terms of your health care contract.

*Ex. D*, pp. 1-2 (emphasis added).  As before, Regence did not refuse coverage due to medically necessity.  It simply applied a blanket exclusion:

> We noted that your request that this decision should be reviewed by a Psychiatrist and that you wanted specific citations from your medical records explaining how we reached our decision.  *Our decision was made based only on your contract language, so did not consider medical necessity criteria*.

*Id*, p. 2 (emphasis added).  *See also id.* ("We are denying your request because of the language of your contract, and we are not denying your request because of the provider's licensing.").

### III.   LAW AND ARGUMENT

**A.    FRCP 12(b) Standards.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1167 (9th Cir. 2002).  This standard requires

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 5

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

Regence to show that "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc., v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

### 1. The Court May Consider the Denial and Appeal Letters.

The Court properly considers "documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint" upon a motion to dismiss. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Regence agrees. Dkt. No. 15, p. 4, lns. 2-7. This includes the operative plan *and* the appeal letters and the letters from Regence denying A.Z.'s claims – appeals and denials that are specifically referenced in the Complaint. *See e.g.* Dkt. No. 1, ¶16; *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D. N.Y. 2005) (proper under ERISA to consider "letters memorializ[ing] the denial of benefits" in motion to dismiss); *Cohen v. Blue Cross Blue Shield*, 2012 U.S. Dist. LEXIS 50817, *7 (D.N.J. April 11, 2012) (same).

### 2. Regence May Not Raise Reasons for Denial that Were Not Set Forth in the Administrative Appeal Process.

Throughout the administrative appeal process Regence articulated *one* reason for its denial of A.Z.'s claim: Evoke was a "wilderness program" and therefore excluded. *Ex. A, B, D*. Regence never took the position that the treatment was not medically necessary. *Id*. Nor did Regence claim that A.Z. did not suffer from an illness, a fact that Regence admits. *Ex. A, B, D*; Dkt. No. 15, p. 11, n. 6 (Regence conceding that A.Z. had an illness). As a result, the supposed exclusion of "wilderness programs" is the only reason for denial that may be considered in litigation. This is because Regence cannot raise in litigation new reasons for denial that it never fully articulated during the administrative appeal process:

> An ERISA plan administrator who denies a claim must explain the "specific reasons for such denial" and provide a "full and fair review" of the denial. 29 U.S.C. § 1133. The

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

administrator must also give the claimant information about the denial, including the "specific plan provisions" on which it is based and "any additional material or information necessary for the claimant to perfect the claim." 29 C.F.R. § 2560.503-1(g). *A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court*, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding.

*Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719-20 (9th Cir. 2012) (emphasis added). Permitting a defendant to raise new reasons for denial, effectively sandbagging a plaintiff, undermines ERISA and its regulations:

Requiring that plan administrators provide a participant with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." "[A] contrary rule would allow claimants, who are entitled to sue once a claim has been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."

*Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (9th Cir. 1992), and *Jebian v. Hewlett-Packard Co., Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003)). *See also Booton v. Lockheed Medical Benefits Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (plan must detail specific reasons for denial, in clear language, during the ERISA appeal process); *Nieves v. Prudential Ins. Co. of Am.*, 233 F. Supp. 3d 755, 762-64 (D. Ariz. 2017). Regence is only permitted to defend its asserted blanket exclusion of wilderness programs – it is simply too late for it to change horses.

**B.    Regence Violated the Plan by Excluding Services for Documented Illnesses Under an Exclusion for "Counseling in the Absence of Illness."**

    **1.    A.Z.'s Treatment for Depression at Evoke is a "Covered Service."**

Under A.Z.'s Plan, "Covered Services" are defined as "a service, supply, treatment or accommodation that is listed in the benefits section of this Booklet." Dkt.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

No. 16, p. 92 of 98.  The benefits booklet provides coverage for mental health services: "We cover Mental Health Services for treatment of Mental Health Conditions."  Dkt. No. 16, p. 45 of 98.  A.Z. has a diagnosed mental illness, depression, which is contained in the most recent edition of the DSM.  Dkt. No. 1, ¶16; Dkt. No. 15, p. 11, n. 6.  This is specifically defined as a "Mental Health Condition" in the benefits section of the Plan.  Dkt. No. 16, p. 45 of 98.  Moreover, the Plan specifically provides coverage for mental health services, including Residential Care:

> <u>Mental Health Services</u> means Medically Necessary outpatient services, ***Residential Care***, partial hospital program or inpatient services ***provided by a licensed facility or licensed individuals***…."

Dkt. No. 16, p. 45 of 98 (underline in original, bold, italic emphasis added).

Regence's definition of "Residential Care" is not limited to care provided by a brick and mortar residential facility, but includes any "organized program" provided by a licensed facility for the level of care for which treatment was provided:

> <u>Residential Care</u> means care received ***in an organized program*** which is provided by a ***residential facility***, Hospital, ***or other facility*** licensed, for the particular level of care for which the reimbursement is being sought, by the state in which the treatment is provided.

Dkt. No. 16, p. 45 of 98 (underline in original, bold, italic emphasis added).

Under these terms, the "organized program" for treatment of A.Z.'s mental health condition at Evoke, a licensed behavioral health facility[1], is expressly covered in the Plan.

---

[1]  "Facility" broadly refers to "space or equipment necessary for doing something."  *See* https://en.oxforddictionaries.com/definition/facility (Oxford Dictionary) (last visited 10/25/17).  *See also Hartford Elec. Light Co. v. Fed. Power Com.*, 131 F.2d 953, 961 (2d Cir. 1942) ("It should be noted that the word 'facilities' is generally regarded as a widely inclusive term, embracing anything which aids or makes easier the performance of the activities involved ….."); *Mashak v. Poelker*, 367 S.W.2d 625, 630 (Mo. 1963) (same).  The fact that the definition in the Plan includes both a "residential facility" and "other facility" underscores the breadth of the term.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 8

ORS 418.205(6)(a) ("'Outdoor youth program' means *a program* that provides, in *an outdoor living setting*, services to children who have…*mental health problems*….") (emphasis added)[2].   An "outdoor living setting" is, by definition, "residential." *See* https://en.oxforddictionaries.com/definition/residential   (Oxford   Dictionary) ("residential" means "designed for people to live in" or "providing accommodation in addition to other services.") (last visited 11/3/2017).   Evoke is therefore both a "residential facility" and "facility" under the Plan.   Regence concedes this: "the Plan … provides generous mental health coverage including Residential Care *in any setting*…." Dkt. No. 15, p. 1, lns. 16-17 (emphasis added).   *See also id.*, p. 14, lns. 19-20 ("The Plan expressly <u>covers</u> Residential Care for mental health conditions in any setting.") (emphasis in original).   Under these coverage provisions, medically necessary mental health care treatment in an organized program at a licensed treatment facility (even an outdoor facility, provided it is licensed) is a "Covered Service" under the Plan.

### 2.   Regence Excludes Services at Wilderness Programs, Even When Those Services Are Medically Necessary to Treat an Illness.

A.Z. accurately alleged that Regence denied her request for coverage – and all her appeals – because it determined that wilderness programs were excluded by the Plan's language.   Dkt. No. 1, ¶16.[3]   Regence's actual practice of excluding wilderness therapy is a classic "blanket exclusion," and is why the complaint targets "Regence's standard discriminatory practice of excluding all coverage for outdoor/wilderness behavioral

---

[2] The American Hospital Association's National Uniform Billing Committee has recognized outdoor/wilderness behavioral health treatment as a billable, all-inclusive mental health service.   It has been assigned a revenue code, which is to be billed on a daily basis. *See* www.nubc.org/subscribersonly/PDFs/UB-04_Change_Implementation_Date_Calendar.pdf, at p. 5 (last visited 11/2/17).

[3] Regence's counsel scolds A.Z., claiming that she "ignores the Plan terms by alleging there is a standalone 'blanket exclusion' for 'outdoor/wilderness behavioral health care programs.'"   Dkt. No. 15, p. 1, lns. 11-14.   But this is not A.Z.'s interpretation, it is *Regence's own actual application of the exclusion*. *See Exs. A, B, D*.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

healthcare programs."  Dkt. No. 1, ¶9.  Regence's new position – that "the Plan **contains no such exclusion** and provides generous mental health coverage including Residential Care **in any setting**" – cannot be reconciled with Regence's three denial letters during the administrative process.  Dkt. No. 15, p. 1, lns. 16-17.  Nor can it be squared with what Regence actually did:  denied coverage for A.Z.'s treatment at Evoke because it was a wilderness program.

### 3.    The Plain Language of the Plan Requires Coverage.

Regence breached its duties under ERISA, and violated the terms of the Plan, when it misapplied the plain language of "Counseling in the Absence of Illness" exclusion.  Dkt. No. 1, ¶¶33, 38.  The language, on its face, only excludes "[s]ervices for counseling in the absence of illness, not expressly described in this plan as a Covered Service."  Dkt. No. 16, p. 59 of 98.  It contains three elements: (1) it only covers "counseling"; and then only (2) "in the absence of illness" where (3) the service is not "expressly described" elsewhere as a covered service.[4]

### a.    First Prong:  The Exclusion Only Applies to _Counseling_.

The organized program of mental health treatment provided by Evoke is not "counseling."  Counseling is a specific type of mental health service under Washington law.[5]  _See_ RCW 18.19.020(6) (Counseling is a service where by a licensed, certified or

---

[4] Regence ignores these criteria entirely when it argues that the "counseling in the absence of illness" exclusion results in the exclusion of all wilderness programs, whether provided for the treatment of mental illness, medical/surgical illness or no illness at all. Dkt. No. 15, p. 11, lns. 10-13.  This unsupported claim makes no sense in light of the specific criteria of the exclusion.  That is also why Regence's invocation of _Welp v. Cigna Health & Life Ins. Co.,_ 17-cv-80237, 2017 U.S. Dist. Lexis 113719, *15, (S.D. Fla. July 20, 2017) is unavailing.  Regence, not A.Z., failed to correctly apply the limiting criteria for the general application of the "counseling in the absence of illness."  _See id.,_ at 12.  In any event, Regence's assertion that wilderness programs are not treatment for mental health conditions, but merely "promote well-being without regard to the presence of illness" cannot be considered on a motion to dismiss.  _Carr v. United Healthcare,_ 2016 U.S. Dist. LEXIS 182561, at *7 (W.D. Wash. May 31, 2016) ("Just as would be true with a 12(b)(6) motion, a 12(c) motion to dismiss is not the vehicle by which to raise factual allegations to defeat a claim.").

[5] The Plan is governed by and construed in accordance with Washington law. Dkt. No. 16, p. 89 of 98.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

registered counselor employs therapeutic techniques related to mental, emotional or behavioral problems).   Counseling has its own IDC-10 billing code, a code that is different from the all-inclusive billing code used by Evoke and other outdoor/wilderness behavioral health programs.   *Compare* https://www.supercoder.com/code-search (last visited 10/26/17) (individual counseling ICD codes are "HZ3----" codes) *with Ex. 11 to Ex. C* (claim forms billed using residential code 1001).   The services are not the same.   Moreover, even if counseling is part of the program, the Plan expressly covers **the entire program**, not just isolated component parts of it.   *See* Dkt. No. 16, p. 45 of 98 (covered care includes "**care received in an organized program** …." (emphasis added).

### b.   Second Prong:  The Program Is Not Rendered "in the Absence of Illness."

Regence admits that A.Z. has an illness.  Dkt. No. 15, n. 6 ("This is not to say that the individual seeking treatment did not have an illness.  A.Z. did have a diagnosis…."). *See also* Dkt. No. 1, ¶16.  Given that the exclusion only applies "in the absence of illness," it is impossible to discern why Regence denied coverage.

During the administrative process, Regence apparently assumed that wilderness programs never treat mental illness.  This assumption is wrong.  Wilderness programs licensed in Oregon can and do treat patients with mental illnesses, therefore meeting the Plan's definition of "Residential Care."  Dkt. No. 16, p. 45 of 98 (coverage available at facilities "licensed, for the particular level of care for which reimbursement is sought, by the state in which the treatment is provided."); ORS § 418.205(6)(a) (licensing programs "that provide, in an outdoor living setting, services to children who have … mental health problems….").  Excluding coverage for a wilderness program that treats patients with mental illnesses (and that is expressly a "Covered Service" under the Plan, *see* Section III, B, *supra*) renders the exclusion nonsensical and internally inconsistent.  Yet

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 11

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

that is exactly what Regence did.   Regence improperly applied the example of "wilderness programs" as a freestanding exclusion, ignoring the very context and controlling criteria of the "Counseling in the Absence of Illness" exclusion in which the example appears.  This is not how ERISA plans are construed.  *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia,* 379 F.3d 557, 560 (9th Cir. 2004) ("[A] clause or phrase cannot be considered in isolation, but should be considered in context, including the propose of the provision."); *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 271 (5th Cir. 2004) (considering "the context … as a whole" when determining plain meaning of an ERISA plan's term).  Regence's application of the exclusion "is both illogical and would render meaningless the clear and explicit criteria that the Plan employs." *A.A. v. Blue Cross & Blue Shield*, 2014 U.S. Dist. LEXIS 29986, *22 (W.D. Wash. March 7, 2014).

Once Regence saw "wilderness programs" as a listed example, it should have asked: Is ***this*** wilderness program provided to treat the insured's illness, or is it providing counseling to this insured without the presence of an illness?  By ignoring this question, Regence improperly barred coverage of wilderness programs provided for mental illnesses, pursuant to an exclusion that only applied "in the absence of illness."

### c.   Third Prong: The Program is Expressly Described as a Covered Service.

Regence failed to consider the third criterion – whether the service sought was "expressly described in this plan as a Covered Service."   Here, as explained above, "mental health services" provided in an organized program at licensed "facilities" are expressly covered by the Plan.  *See* Section III, B, 1 *supra*.  Regence ***concedes*** this.  *See also* Dkt. No. 16, p. 45 of 98, p. 92 of 98; Dkt. No. 15, p. 14, lns. 19-20 ("The Plan ***expressly*** covers Residential Care for mental health conditions ***in any setting***.").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 12

Sirianni Youtz
Spoonemore Hamburger
701 Fifth Avenue, Suite 2560
Seattle, Washington  98104
Tel. (206) 223-0303   Fax (206) 223-0246

**4.      Any Ambiguity Must Be Construed Against Regence.**

Regence violated the plain language of the Plan by excluding all coverage for wilderness programs to treat A.Z.'s mental health condition and that of all other similarly situated insureds.  But even if the Court found that Regence could rely upon the "wilderness programs" example to deny coverage, that would, at best, render the exclusion ambiguous because it conflicts with the "Counseling in the Absence of Illness" criteria.  Under ERISA, ambiguous terms in an insured plan are construed against the insurer and in favor of coverage.  *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 625 (9th Cir. 2007).

**5.      The Insured's Reasonable Expectations Also Requires Coverage.**

In using an example – "wilderness programs" – to exclude treatment that, in fact, does not begin to meet the Plan criteria for exclusion, Regence violates a second ERISA rule:  the doctrine of reasonable expectations.  An insurer of an ERISA plan has the obligation to make "exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to policy terms, and must bring such provisions to the attention of the insured."  *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 386 (9th Cir. 1994).  The test is objective, and no reliance need be shown. *Lancaster v. United States Shoe Corp.*, 934 F. Supp. 1137, 1154-1155 (N.D. Cal. 1996) (collecting cases).  Here, no reasonable insured would believe that an exclusion for "***Counseling*** in the ***Absence*** of Illness" would somehow operate to deny coverage for ***non-counseling*** services in the ***presence*** of illness that is also covered elsewhere in the Plan.  Put differently, the exclusion is not "conspicuous, plain, and clear" as applied by Regence to therapeutic wilderness programs designed (and licensed) to treat mental illnesses.

In *Saltarelli*, the Ninth Circuit considered an ERISA plan that, when read literally, excluded the insured's medical care under a pre-existing condition exclusion.  An

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 13

insured, however, would only be able to discern the existence of the exclusion by reading the definitions section of the plan:

> [T]he exclusion can be found only in the midst of the "Definitions" chapter.  Even then, it requires a coordinated reading of three separate definitions: those for "Pre-Existing Condition," "Illness," and "Injury."

*Saltarelli*, 35 F.3d at 385.

Here, a reasonable insured diagnosed with a mental illness would review the Plan to see if his or her treatment was a "Covered Service."  After concluding that it was a Covered Service, *see* Section III, B, 1, *infra*, a reasonable insured would review the titles of the exclusions to determine whether any of them might apply.  Here, the title of the exclusion would never alert an insured that it could apply where a documented mental illness was being treated by an otherwise covered mental health service.  Even if the insured read the criteria there would be no hint that it would apply to a Covered Service when an illness was present.  On the contrary, the exclusion itself states that expressly covered services are provided notwithstanding the exclusion.  To permit Regence to exclude treatment by virtue of an example (and in a manner that is incongruous with the criteria in the first sentence of the exclusion) violates the reasonable expectations of an insured.  *Saltarelli*, 35 F.3d at 386; *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1135 (9th Cir. 1996) (inconspicuous language cannot exclude coverage); *Henry v. Home Ins. Co.*, 907 F. Supp. 1392, 1396-97 (C.D. Cal. 1995) (language resulting in exclusion which is located in definitions section of a plan violates reasonable expectations of insured).

**C.    Regence Violated the Parity Act by Imposing a Blanket Exclusion on a Wildness Programs.**

This case can be resolved on the plain language of the Plan. Regence's blanket exclusion on all wilderness programs, however, also violates the Parity Act.

The Mental Health Parity Act mandates parity between the "treatment limitations" placed on mental health benefits and on medical/surgical benefits:

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 14

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

> In the case of a group health plan ... that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
> .....
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan ... and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

The Parity Act instructed the Secretaries of Labor, Health and Human Services, and Treasury to issue "guidance and information" on the Parity Act's requirements. That guidance was originally provided in Interim Final Rules before being issued as Final Rules. These regulations set forth a step-by-step process to determine whether an exclusion – or an insurer's application of an exclusion – violates the Act. *First*, the relevant limitation must be identified. A limitation can exist on the face of the Plan, or it may occur in application – both require parity. *Second*, the service in question must be classified into one of six categories. All services must be classified, including so-called intermediate services (those between inpatient and outpatient treatment). *Third*, the exclusion or limitation of the mental health care services at issue must be compared to *all* of the medical/surgical limitations within that category to determine if the exclusion of the insured's mental health care is permitted:

> A group health plan … that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any … treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant … treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

29 C.F.R. § 2590.712(c)(2)(i))(A); Preamble, IFRs, 75 Fed. Reg. at 5413.  Applying these steps to Regence's blanket exclusion highlights its violation of the law.[6]

> **1.     Because the Parity Act Examines How a Treatment Limitation is *Actually* Applied, the Relevant Limitation Is Regence's Blanket Exclusion of Wilderness Programs.**

While Regence now argues that the "Counseling in the Absence of Illness" exclusion is not a blanket exclusion of wilderness programs, *see* Dkt. No. 15, p. 1, lns. 11-17, the relevant inquiry in this case is how Regence **actually applied** the exclusion.  This is true because, not surprisingly, the Parity Act is focused on how benefits are actually provided.  An insurer's obligation does not end with drafting a plan that superficially appears to comply with the Parity Act.  It must also actually apply the Plan in a way that provides the benefits required by law.  *See e.g.* 29 U.S.C. § 1185a(a)(3)(A) ("…such plan or coverage ***shall ensure that***….") (emphasis added).[7]  Regence's argument that it drafted a compliant plan is irrelevant given that, **in actual application**, it imposes a blanket exclusion on mental health care rendered at a wilderness program.  The only relevant question under the Parity Act is whether Regence's application of a blanket exclusion of medically necessary "wilderness programs" that treat mental health conditions violates the Parity Act.

---

[6] The statutory requirements of the Parity Act become "terms of" the Plan, and are enforceable through ERISA. *UNUM Life Ins. v. Ward*, 526 U.S. 358, 376-77, 119 S. Ct. 1380 (1999); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 648 n.4 (9th Cir. 2000); *Cisneros v. Unum Life Ins. Co.*, 134 F.3d 939, 944 (9th Cir. 1998).  They are also directly enforceable under 29 U.S.C. § 1132(a)(3) as a violation of ERISA.  *A.F. v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1304 (D. Or. 2014).

[7] *See also* 29 C.F.R. § 2590.712(c)(iv)(2) ("A group health plan … ***may not apply*** any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation.") (emphasis added); Preamble, IFRs, 75 Fed. Reg. at 5416 (The "processes, strategies, evidentiary standards, or other factors" could not just be comparable "on their face;" the group health plan had to apply them "***in the same manner***.") (emphasis added); 29 C.F.R. § 2590.712(c)(4)(i) (plan cannot impose limitation within a classification "unless, under the terms of the plan (or health insurance coverage) ***as written and in operation***" comparable restrictions exist) (emphasis added).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 16

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

### 2. Regence Is Required to Classify Wilderness Programs in the Same Category as Residential Treatment Centers.

The Interim Final Rules explained that "the parity requirements for ... treatment limitations are applied on a classification-by-classification basis." Preamble, IFRs, 75 Fed. Reg. at 5412.  The Interim Final Rules established six "classifications of benefits" for purposes of Parity Act compliance: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. Preamble, IFRs, 75 Fed. Reg. at 5413.  These categories were expressly retained in the Final Rule.[8]  29 C.F.R. § 2590.712(c)(2)(ii)(A). With respect to "intermediate services" – services that do not fit squarely within the "inpatient" or "outpatient" categories – classification is still required. 29 C.F.R. § 2590.712(c)(2)(ii)(A); *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 116 (1st Cir. 2017) ("Intermediate services [are] services somewhere between traditional inpatient and outpatient care.").  While the insurer has discretion with respect to whether intermediate services should be classified as inpatient or outpatient, all intermediate services must be in the same category.  78 Fed. Reg. 68240, at 68246-7 ("Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications.).  *See also id*. ("For example, if a plan or issuer classified care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered

---

[8] Categorization is a critical step in the analysis – it prevents insurers (as Regence does here) from arguing that facially neutral exclusions comply when, *in application,* they result in the disparate exclusion of mental health care.  *Joseph & Gail F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016) (finding Parity Act violation where residential treatment exclusion was applied by the Plan only to exclude mental health treatment, even though it appeared in the general exclusion section of the plan).  This concept exists within the statute itself, which requires that "treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations *applied to substantially all medical and surgical benefits covered by the plan.*"  29 U.S.C. § 1185a(a)(3)(A)(ii).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.").

Regence was therefore required to classify residential wilderness programs into the same category as other residential treatment centers. Such classification is consistent with the Regence plan definition of "Residential Care," which expressly includes treatment at both "residential facilities" and "other facilities." Dkt. No. 16, p. 45 of 98.  It is also consistent with Oregon law.   *See* ***Appendix A***, comparing licensed Outdoor/wilderness Behavioral Healthcare Programs and licensed Residential Treatment Centers. Whether classified as inpatient or outpatient, each of these services must exist within the same category.

> 3. **Because Regence Covers Medical and Surgical Services Rendered at Skilled Nursing Facilities and Rehabilitation Hospitals, It Cannot Exclude Mental Health Care Provided in Residential Wilderness Facilities.**

The Final Rules directed that "[r]estrictions based on *geographic location, facility type*, provider specialty, and other criteria that limit the scope or duration of benefits for services" are nonquantitative "treatment limitations" under the Parity Act. 29 C.F.R. § 2590.712(c)(4)(ii) (emphasis added).   A blanket exclusion on wilderness programs is an exclusion of "facility type," and is therefore a nonquantitative treatment limitation.   As applied to mental health care, an insurer may not impose this nonquantitative treatment limitation

> with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4).

Regence, however, explicitly *covers* – and does not exclude – medical and surgical services rendered at intermediate facilities such as at rehabilitation hospitals and skilled nursing facilities.   Dkt. No. 16, p. 49 of 98.   Regence has therefore imposed a nonquantitative treatment limitation – a blanket exclusion – on the scope of intermediate services it covers – medically necessary treatment at outdoor/wilderness behavioral healthcare programs – that is not in parity with the treatment limitations it imposes on comparable intermediate medical/surgical services, such as skilled nursing facilities and rehabilitation hospitals, which are expressly covered.   Given this disparity, Regence has facially employed "processes, strategies, evidentiary standards" and other factors in assessing medically necessary services rendered at outdoor/wilderness behavioral healthcare programs that are different than the standards it employs in assessing medically necessary services rendered at skilled nursing facilities and rehabilitation hospitals. That violates the Parity Act.   29 C.F.R. § 2590.712(c)(4)(ii).

Contrast Regence's position with these three Parity Act violations:

- In practice, inpatient benefits for medical/surgical conditions are routinely approved for seven days, after which a treatment plan must be submitted by the patient's attending provider and approved by the plan. On the other hand, for inpatient mental health and substance use disorder benefits, routine approval is given only for one day, after which a treatment plan must be submitted by the patient's attending provider and approved by the plan. 78 Fed. Reg. 68240. *This is a violation where the insurer has established a different process for evaluating coverage – a materially more modest violation than Regence's express exclusion that applies only to the mental health program and not to the comparable medical/surgical service.*

- A plan generally covers medically appropriate treatments. The plan automatically excludes coverage for inpatient substance use disorder treatment in any setting outside of a hospital (such as a freestanding or residential treatment center). For inpatient treatment outside of a

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

hospital for other conditions (including freestanding or residential treatment centers prescribed for mental health conditions, as well as for medical/surgical conditions), the plan will provide coverage if the prescribing physician obtains authorization from the plan that the inpatient treatment is medically appropriate for the individual, based on clinically appropriate standards of care. 78 Fed. Reg. 68240. ***This violation comes close to the situation Regence has created – where it automatically excludes coverage for medically necessary mental health treatment in a wilderness program but not in a hospital setting.***

- A plan generally provides coverage for medically appropriate medical/surgical benefits as well as mental health and substance use disorder benefits. The plan excludes coverage for inpatient, out-of-network treatment of chemical dependency when obtained outside of the State where the policy is written. There is no similar exclusion for medical/surgical benefits within the same classification. 78 Fed. Reg. 68240. ***This violation, too, parallels Regence's violation, where it has employed different criteria to exclude all coverage at wilderness programs and yet authorizes coverage for services rendered at the parallel skilled nursing facilities and rehabilitation hospitals.***

In sum, because "[t]here is no corresponding exclusion for treatment of medical and surgical conditions in similar residential facilities," *Craft v. Health Care Serv. Corp.*, 84 F. Supp.3d 748, 749-50 (N.D. Ill. 2015), Regence's practices violate the Parity Act, and A.Z. has stated a *prima facie* claim.

Finally, Regence may not simply assert that it excludes all coverage of wilderness therapy generally, whether the treatment is sought as a mental health or medical/surgical service. The problem: there is no evidence that (1) licensed wilderness/outdoor behavioral health programs treat any medical/surgical conditions *or* (2) Regence actually applied its wilderness exclusion to treatment for medical/surgical conditions. *See Joseph F.*, 158 F. Supp. 3d at 1262 ("Without evidence to that effect, the Administrator's argument that it would have also denied residential treatment benefits for medical or surgical conditions under the exclusion is illusory."). Upon a motion to dismiss, the allegation that Regence applies the exclusion to mental

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 20

Sirianni Youtz
Spoonemore Hamburger
701 Fifth Avenue, Suite 2560
Seattle, Washington  98104
Tel. (206) 223-0303   Fax (206) 223-0246

health services when the same or similar exclusion is not predominantly imposed on medical/surgical services must be accepted as true.  Dkt. No. 1, ¶17.

**D.     Regence's Exclusion of Wilderness Programs Violated the ACA.**

Regence argues that A.Z. may not bring an ERISA cause of action to enforce the Affordable Care Act's provider anti-discrimination provision, 42 U.S.C. § 300gg-5(a); 29 U.S.C. § 1185d.  *See* Dkt. No. 16-17.  Regence is wrong for at least three reasons:

*First***,** A.Z. alleged sufficient facts about her provider to proceed.  She alleged that she sought wilderness treatment at a licensed wilderness provider in 2016.  *See* Dkt. No. 1, ¶¶12, 16 ("A.Z. required treatment for her mental health condition at a *licensed outdoor/wilderness behavioral healthcare program in 2016*"); ¶27 (incorporating by reference A.Z.'s appeals file); *see Ex. C, at Ex. 9.*  There is no *Twombly* issue here.

*Second***,** by its terms, the Regence plan incorporates all relevant state and federal laws:  "The Contract will be governed by and construed in accordance with the laws of the United States of America and the laws of the state of Washington…" Dkt. No. 16, p. 59 of 98.  All Regence plan provisions must be governed by and construed in light of the applicable Affordable Care Act's requirements.  Regence's application of a blanket exclusion of services provided by licensed outdoor/wilderness behavioral health programs violates 42 U.S.C. § 300gg-5(a); 29 U.S.C. § 1185d. That legal violation is also a breach of the Regence contract.  *See Z.D. v. Grp. Health Coop.,* 829 F. Supp. 2d 1009, 1013 (W.D. Wash. 2011) ("The problem for Defendants lies in the fact that Washington law governs the Plan" citing to a similar "governing law" provision.)

*Third***,** the ACA provider anti-discrimination provision is engrafted, as a matter of law, onto ERISA-regulated group health plans through 42 U.S.C. § 300gg-91(a).  A.Z.'s right to enforce these protections comes through 29 U.S.C. § 1104(a)(1), which requires fiduciaries (like Regence) to discharge its duties "in accordance with the documents and instruments governing the plan." Section 1104(a)(1), in turn, is expressly enforceable by

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 21

A.Z., through § 1132(a)(3), which gives ERISA participants the express right "to enjoin any act or practice which violates any provision of [ERISA] … or to obtain other appropriate equitable relief … to redress such violations." Thus, an ERISA statutory violation is redressable through ERISA's private enforcement mechanism.  *A.F.*, 35 F. Supp. 3d at 1304("Because the Federal Parity act is enacted as part of ERISA, it is enforceable through a cause of action under §1132(a)(3) as a violation of a 'provision of this subchapter.'").

Regence cites two cases in support of its "no private right of action" argument, but both slay strawmen. Both cases, *Association of New Jersey Chiropractors Inc. v. Horizon Healthcare Servs., Inc.*, 2017 U.S. Dist. LEXIS 90545 (D.N.J. June 13, 2017) and *Dominion Pathology Labs, P.C. v. Anthem Health Plans of Virginia, Inc.*, 111 F. Supp. 3d 731 (E.D. Va. 2015), involve disputes between providers and insurers. No ERISA claim was brought in either case and ERISA's enforcement mechanism was never invoked.

**E.    Plaintiff A.Z. Need Not Plead Plan Losses to Support Her Claims.**

Regence argues that A.Z. must allege "plan losses" to support a claim under 29 U.S.C. § 1132(a)(2).  *See* Dkt. No. 15, pp. 17-18.  Recent controlling authority holds that plan losses are not required where, as here, plaintiff seeks equitable relief under (a)(2):

> Here, plaintiffs seek purely equitable relief, either to enjoin future misconduct, or to have the trustees removed. Requiring a showing of loss in such a case would be to say that the fiduciaries are free to ignore their duties so long as they do no tangible harm, and that the beneficiaries are powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done. This result is not supported by the language of ERISA, the common law, or common sense

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003); *see also Tibble v. Edison Intern.*, 639 F. Supp. 2d 1074, 1097 (C.D. Cal. 2009) ("[I]n light of *Shaver*, the Court finds that Plaintiffs are not barred from pursuing their claim for breach

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

of the Plan documents even in the absence of some loss to the Plan."); *Wit v. United Behavioral Health*, 2017 U.S. Dist. LEXIS 1290, *40-45 (N. D. Cal. August 14, 2017) (plan loss not required for equitable remedies arising from allegations that "the process by which a coverage determination was made was defective").

A.Z. seeks an injunction requiring corrective notice to insureds.[9] Dkt. No. 1, ¶¶13, 40.  Having previously lost on this identical issue, Regence knows that "plan losses" are not required for this type of equitable relief.  *J.T. v. Regence BlueShield*, 291 F.R.D. 601, 610 (W.D. Wash. 2013).  Likewise, an injunction requiring Regence to reprocess and pay claims wrongfully denied, or requiring disgorgement of funds improperly withheld, are both forms of equitable relief that do not require "plan losses."  Dkt. No. 1, ¶¶34, 38; *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) ("Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, *or to prevent the trustee's unjust enrichment*.") (emphasis added); *Skinner v. Northrop Grumman*, 673 F.3d 1162, 1167 (9th Cir. 2012) ("A trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary."); *Z.D. v. Group Health Coop.*, 829 F. Supp. 2d 1009, 1016-17 (W.D. Wash. 2011) (same).  To require a showing of a loss to the plan in a situation where the insurer is profiting by not paying Plan benefits "is not supported by the language of ERISA, the common law or common sense."  *Shaver*, 332 F.3d at 1203.

**F.      Plaintiff A.Z. Is Not Seeking Prospective Remedies.**

Regence manufactures an argument against prospective injunctive relief where there is none.  *See* Dkt. No. 15, pp. 18-21.  A.Z. alleged that her Regence insured coverage ended by January 1, 2017.  *See* Dkt. No. 1, ¶¶3, 16.  She did not include any claim for prospective injunctive relief under any of the three claims alleged.  *See* Dkt. No. 1, ¶¶28-

---

[9] Misinformation by a fiduciary is a breach of duty. *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) ("fiduciaries breach their duties if they…misrepresent the terms…of a plan").

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

41.  Although her Demand for Relief includes a request to "enjoin Regence from further violations of the terms of its ERISA insured plans" the requested relief can only apply to claims incurred through December 31, 2016.  Should the Court conclude that Regence improperly administered its coverage to exclude all coverage of wilderness programs, A.Z. and the class are entitled to declaratory and injunctive relief related to the processing and reprocessing of claims incurred through December 31, 2016.

### IV.   CONCLUSION

During the ERISA administrative appeal process Regence consistently denied A.Z.'s claim for only one reason:  it was an excluded "wilderness program." Recognizing that this blanket exclusion is indefensible, Regence does an about-face in this litigation. The problem, however, is that ERISA does not allow Regence to change the reason for its denials.  It must defend its blanket exclusion of wilderness programs that treat mental illnesses – something that Regence has not, and given the plan language and Parity Act requirements, cannot do.  Regence's motion should be denied.

DATED:  November 3, 2017.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

   _/s/ Richard E. Spoonemore_
Richard E. Spoonemore (WSBA #21833)
Eleanor Hamburger (WSBA #26478)
   Email: ehamburger@sylaw.com
          rspoonemore@sylaw.com

JORDAN LEWIS, P.A.

   _/s/ Jordan M. Lewis_
Jordan M. Lewis (*pro hac vice pending*)
   Email: jordan@jml-lawfirm.com

Attorneys for Plaintiff

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

# *Appendix A—Oregon Licensing Requirements*

| | Outdoor/wilderness Behavioral Healthcare Programs | Residential Treatment Centers |
|---|---|---|
| **Licensing requirements** | Must be licensed to operate. | Must be licensed to operate. |
| **Mandatory staff positions** | Executive director, who must have a bachelor's and a master's degree; field director; senior field staff; licensed health care professional; treatment professional; certified alcohol drug counselor or equivalent if program treats patients with substance abuse problems. OAR 413-215-0966. | Clinical supervisor, emergency safety intervention specialist, qualified mental health professional and associate, medical director. OAR 309-022-0120. Bachelor's and post-graduate, but not master's, required for some positions. OAR 309-022-0125. |
| **Multidisciplinary team** | Program must have multidisciplinary team of staff of consultants who have knowledge of physical and emotional demands of program and are available to patients; also must be available to program staff for consultation regarding appropriateness of admission of a patient in care. OAR 413-215-0966. | "Interdisciplinary team" shall review patient every 30 days from date of entry. OAR 309-022-0140. |
| **Staff ratios** | Group may not exceed 12 patients, one staff member for every three patients. OAR 413-215-0986. | Family therapist to child ratio shall be no less than 1 to 12. OAR 309-022-0155.  Staff to patient ratio is no less than 1 to 3. OAR 309-022-0160. |
| **Discharge summary** | Discharge summary required, must include written summary of participation and progress, results of evaluations, briefings and debriefings, program compliance, and recommendations. OAR 413-215-0996. | Transition plan must include written summary that describes effectiveness of services in assisting patient. OAR 309-022-0180. |
| **Recordkeeping** | Field office or base of operations must have available such information as patients' names, patient requirements, legal guardian consent and proof of compliance. OAR 413-215-0916. | Program must maintain documentation of supervision. OAR 309-022-0130. |

APPENDIX A TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

| Safety | Program required to have written policies concerning equipment safety, environmental hazards, risk management procedures and health and nutrition. OAR 413-215-0931. | Program required to have safety interventions committee. OAR 309-022-0170. |
|---|---|---|
| **Medicine** | Must be maintained by program, not patients. OAR 413-215-0961. | Must be maintained by program, with written protocol. OAR 309-022-0110. |
| **Program services** | Program includes admissions, psychological history, mental health diagnosis, service planning, review. OAR 413-215-0996. | Program includes developing behavior support strategies, documentation of strategies and establishing tracking methods. OAR 309-022-0165. |

**APPENDIX A** TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS – 2

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, theresa@sylaw.com

- **Stephanie R. Lakinski**
  slakinski@karrtuttle.com

- **Jordan Matthew Lewis**
  jordan@jml-lawfirm.com

- **Medora A Marisseau**
  MMarisseau@karrtuttle.com, kmejia@karrtuttle.com

- **Richard E Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

- (No manual recipients)

DATED:  November 3, 2017, at Seattle, Washington.


   _/s/ Richard E. Spoonemore_
   Richard E. Spoonemore (WSBA #21833)
   Email:  rspoonemore@sylaw.com

CERTIFICATE OF SERVICE – 1