UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A. Z., by and through her parents and
guardians, E.Z. and D.Z.,
individually, and on behalf of the
JUNO THERAPEUTICS, INC.,
HEALTH BENEFITS PLAN, and on
behalf of similarly situated individuals
and plans,

            Plaintiff,

   v.

REGENCE BLUESHIELD; and
CAMBRIA HEALTH SOLUTIONS,
INC., f/k/a THE REGENCE GROUP,

          Defendants.

C17-1292 TSZ

ORDER

THIS MATTER comes before the Court on the defendants' Motion to Dismiss, docket no. 40 (the "Motion").[1] Having reviewed all papers filed in support of, and in

---

[1] On February 15, 2018, the Court dismissed without prejudice the original complaint, docket no. 1, for failure to state a claim. *See* docket no. 33. A.Z. filed the operative amended complaint, docket no. 36 (the "Amended Complaint"), on March 16, 2018.

opposition to, the Motion, [2] including the notices of supplemental authority submitted by the parties, *see* docket nos. 47–49, the Court enters the following order.

**Background**

### I.     <u>Introduction</u>

Plaintiff A.Z. ("A.Z.") is a 16-year-old female who was diagnosed with depression. Amended Complaint at ¶¶ 5, 17. Following her doctors' recommendation, she attended an outdoor residential mental health program in Oregon. *Id.* at ¶ 19. She sought reimbursement for the costs of the program under her parents' health benefit plan, but was denied. A.Z., by and through her parents and guardians and on behalf of the Juno Therapeutics, Inc. Health Benefit Plan (the "Plan"),[3] brings this putative class action against defendants Regence Blueshield ("Regence") and Cambria Health Solutions Inc. ("Cambria" and, collectively with Regence, "Defendants")[4] seeking remedies under the Employee Retirement Income Security Act of 1974 ("ERISA") for Regence's alleged failure to comply with the terms of the Plan and denial of coverage for the services she received at the outdoor mental health program she attended. *See* Amended Complaint at ¶¶ 1–4.

---

[2] Plaintiff's Opposition to Defendants' Motion to Dismiss, docket no. 44, is referred to as the "Opposition." Defendants' Reply in Support of Motion to Dismiss, docket no. 46, is referred to as the "Reply."

[3] The Plan is attached to the Amended Complaint at docket no. 36-1.

[4] "Regence Blueshield is a Washington non-profit corporation and Cambria Health Solutions, Inc., an Oregon non-profit private corporation, is the . . . sole member of Regence Blueshield." Corporate Disclosure Statement, docket no. 24.

Regence underwrote, insured, and administered the Plan's health benefits until January 1, 2017. Amended Complaint at ¶ 7. A.Z. is a beneficiary of the Plan whose coverage is through her parent's employment with Juno Therapeutics, Inc. *Id.* at ¶ 5. A.Z.'s depression reached a level that "required treatment at a licensed outdoor/wilderness behavioral healthcare program." *Id.* at ¶¶ 17–18. Her doctors recommended that she receive behavioral health treatment at "Evoke, an outdoor residential mental health program in Oregon." *Id.* at ¶ 19.

## II.     A.Z.'s Requested Coverage

A.Z. sought preauthorization from Regence for the Evoke treatment, but Regence denied her request. *Id.* at ¶¶ 29–30. Regence explained that A.Z.'s participation in a wilderness program was not subject to preauthorization or eligible for benefits because it was excluded from the Plan. *Id.* at ¶ 30, Ex. C. Unable to delay her treatment, A.Z. began the Evoke wilderness program and appealed Regence's denial of coverage. *Id.* at ¶¶ 34, 38. Regence denied the appeal, reaffirming that the Plan does not cover the requested services and "specifically excludes wilderness therapy programs from coverage." *Id.* at ¶¶ 35, 39. By the time she completed her treatment at Evoke, A.Z. had incurred nearly $50,000 in expenses, which Regence refused to reimburse. *See* Amended Complaint, Exhibit 11 (periodic statements submitted by Evoke).

## III.     The Evoke Wilderness Program

The State of Oregon licenses Evoke as an "outdoor youth program." *Id.* at ¶ 20, Exhibit B ("Certificate of Approval to Operate a Child Caring Agency"). Evoke's licensing certificate confirms that it is authorized to operate its program "under

provisions of Oregon Revised Statutes 418.205 to 418.327 and related statutes . . . ." *Id.*, Exhibit B. Because it is a certified "outdoor youth program," Evoke is authorized by statute to provide, in an outdoor living setting, services to children who have mental health problems. *Id.*

Consistent with its statutory authority, Evoke's wilderness program "is a personal intervention that utilizes nature, small-group outdoor living, backpacking, one-on-one therapy, and group therapy." Evoke Therapy Programs, *Wilderness Therapy* (March 2017), https://evoketherapy.com/assets/Uploads/Wilderness-Therapy-3-17.pdf. Among other services, Evoke's wilderness program provides therapy from "experienced Master's or Ph.D. level therapists" who "create customized treatment plans for each participant and their families and offer guidance and support to meet their unique challenges." *Id.*

## IV.    A.Z.'s Claims for Relief

A.Z. now brings suit under ERISA, on behalf of a putative class, contending that Defendants have improperly denied benefits under the Plan and breached their fiduciary duties to adjudicate benefits determinations in violation of applicable law, including the Paul Wellstone and Pete Domenici Mental Health Parity and Addition Equity Act, *see* 29 U.S.C. § 1185a (the "Parity Act"), and the Affordable Care Act (the "ACA"), 42 U.S.C. § 300gg-5(a); 29 U.S.C. § 1185d. *See* Amended Complaint at ¶¶ 2–4, 63–73, 98–103.

A.Z. asserts four claims. Her first claim alleges that Defendants' denial of the costs of attending the Evoke wilderness program was improper under ERISA and seeks to recover any benefits due, along with a declaration of rights to coverage. *Id.* at ¶¶ 84–88. Her second claim asserts that Defendants' improper denial of coverage was a breach

of Defendants' fiduciary duties imposed by ERISA.  *Id.* at ¶¶ 89–95.  Her third claim

seeks to enforce the Plan, alleges a violation of the Parity Act and the ACA, and seeks to

recover the benefits due to A.Z. under the Plan.  *Id.* at ¶¶ 96–103.  Her fourth claim asks

for equitable remedies under ERISA for Defendants' violation of the Parity Act and the

ACA.  *Id.* at 104–06.

Defendants put forth three primary arguments in support of their Motion seeking

dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

First, Defendants argue that A.Z. has failed to allege sufficient facts establishing that the

Plan covered the Evoke wilderness program in the first instance, thereby precluding

recovery.  Motion at 1, 7–11.  Second, Defendants contend that the "Counseling in the

Absence of Illness" exclusion expressly excludes coverage for the Evoke wilderness

program.  *Id.* at 1, 11–12.  Third, Defendants argue that A.Z. has failed to adequately

plead Parity Act and ACA violations.  *Id.* at 13–21.

**Discussion**

**I.  Motion to Dismiss Standard**

A complaint challenged by a Rule 12(b)(6) motion to dismiss must offer "more

than labels and conclusions" and contain more than a "formulaic recitation of the

elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint must indicate more than mere speculation of a right to relief.  *Id.*  When a

complaint fails to adequately state a claim, such deficiency should be "exposed at the

point of minimum expenditure of time and money by the parties and the court."  *Id.* at

558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable

legal theory, or (ii) insufficient facts under a cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *Twombly*, 550 U.S. at 570.

Plaintiff has attached various documents to the Amended Complaint, including the Plan and documents regarding A.Z.'s appeal of Defendants' decision to deny coverage.  In deciding the Motion, the Court will consider all of these documents attached to the Amended Complaint without converting the Motion to one for summary judgment.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  The Court may also consider evidence subject to judicial notice, including Evoke's website.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Fed. R. Evid. 201(b).

## II.  <u>Coverage Under the Plan (First and Second Claims)</u>

A.Z.'s first and second claims hinge on whether the Plan provided coverage for the Evoke wilderness program.  If no coverage exists, then A.Z. cannot succeed on her claim to recover benefits or for breach of fiduciary duties for denying such benefits.[5]  The Amended Complaint alleges that the Plan provides coverage to A.Z. for "Mental Health Services" which specifically includes "Residential Care" provided by a licensed facility.  Amended Complaint at ¶¶ 1, 25–26.  The Amended Complaint asserts that Evoke's

_____

[5] As discussed below, A.Z. could arguably still succeed on a Parity Act or ACA theory even in the absence of coverage under the Plan.

wilderness program is a covered facility within the corresponding terms of the Plan. *Id.*
at ¶¶ 27–28. Defendants dispute this characterization and argue that the program is not a
benefit covered under the Plan.

A. **The Plan covers Mental Health Services for treatment of Mental Health Conditions**

The Plan covers "Mental Health Services for treatment of Mental Health
Conditions." Plan at Regence 0041. Clarifying this term, the Plan provides the following
definitions:

> Mental Health Conditions means mental disorders in the most recent
> edition of the Diagnostic and Statistical Manual of Mental Disorders
> published by the American Psychiatric Association except as otherwise
> excluded in this [Plan].

> Mental Health Services means Medically Necessary outpatient services,
> Residential Care, partial hospital program or inpatient services provided by
> a licensed facility or licensed individuals with the exception of Skilled
> Nursing Facility Services . . . .

> Residential Care means care received in an organized program which is
> provided by a residential facility or Hospital, or other facility licensed, for
> the particular level of care for which reimbursement is being sought, by the
> state in which the treatment is provided.

*Id.* The parties' coverage dispute centers on these definitions.[6]

---

[6] A.Z. argues that Defendants waived any argument that treatment at Evoke is not covered under these
terms of the Plan. Opposition at 1–2, 6–7, 24. In general, a plan administrator cannot raise new reasons
for denying coverage if it did not raise them during the administrative process. *Harlick v. Blue Shield of
Cal.*, 686 F.3d 699, 719–20 (9th Cir. 2012). Under this rule, A.Z. posits that Defendants are restricted to
relying on the Plan's "Counseling in the Absence of Illness" exclusion, since that was the only reason
Defendants offered in denying coverage prior to this federal court litigation. The Court disagrees. While
the focus of Defendants' denial was certainly on the "Counseling in the Absence of Illness" exclusion, the
record suggests that Defendants conveyed to A.Z. that they were denying coverage "[a]ccording to the
terms of [the] health care plan" in general. *See, e.g.*, Amended Complaint, Exhibit D (October 17, 2016,
denial letter). Moreover, the exclusion itself extends only to services "not expressly described in this plan
as a Covered Service." Plan at Regence 55. Thus, out of an abundance of caution, the Court finds it

### 1.   **Mental Health Condition**

The Amended Complaint alleges that "A.Z. has a diagnosed mental illness, depression, which is contained in the most recent edition of the DSM [Diagnostic and Statistical Manual of Mental Disorders]." Amended Complaint at ¶ 24. Thus, A.Z. has alleged that she suffers from a Mental Health Condition expressly covered by the Plan. Plan at Regence 0041. A.Z. alleges that, to treat this condition, her doctors recommended that she attend Evoke's wilderness program. Amended Complaint at ¶ 19.

### 2.   **Mental Health Services & Residential Care**

Addressing the Plan's "Residential Care" definition, the parties' dispute whether the Evoke wilderness program was (1) an organized program (2) provided by a facility that was (3) licensed for the particular level of care for which reimbursement was sought. As to the first issue, the Amended Complaint alleges that "Evoke is, and was while A.Z. received treatment, licensed as an 'outdoor youth program.'" Amended Complaint at ¶ 20, Exhibit B. Evoke's licensing certificate expressly authorizes Evoke to operate an "Outdoor Youth Program" pursuant to ORS 418.205 through .327. *Id.*, Exhibit B. ORS 418.205(6)(a) defines "outdoor youth program" as "a program that provides, in an outdoor living setting, services to children who have . . . mental health problems . . . ." *See also* Amended Complaint at ¶ 21 (quoting the statute). The Amended Complaint's allegations that Evoke's wilderness program is "an organized program" licensed by the

necessary to determine whether the Amended Complaint has plausibly alleged that the Evoke wilderness program is covered by the Plan but for the "Counseling in the Absence of Illness" exclusion. For these same reasons, the Court does not reach the issue of whether a procedural violation gave rise to coverage. *See* Reply at 1–3.

State of Oregon fall squarely within the definition of Residential Care provided by the Plan. Plan at Regence 0041.

Concerning whether Evoke is a "facility" within the definition of Residential Care, the Amended Complaint alleges that Evoke is both a "residential facility" and "facility" under the Plan's definition of Residential Care. Amended Complaint at ¶ 2. The Plan does not define the word "facility," and Defendants urge the Court to apply the term's ordinary meaning in arguing that a "facility" should be limited to a "brick and mortar" structure. *See* Motion at 9.

Defendants' "brick and mortar" argument is unconvincing, as the ordinary meaning of "facility" is not so restrictive. The common dictionary definition of "facility" supplied by Defendants includes "something . . . that is . . . established to serve a particular purpose." Facility, Merriam-Webster's Dictionary (11th ed. 2018), *available at* https://www.merriam-webster.com/dictionary/facility. That same dictionary also provides an alternative definition of facility, which Defendants appear to ignore: "something that makes an action, operation, or course of conduct easier[.]" *Id.* Drawing all inferences in favor of A.Z., as it must on a motion to dismiss, the Court concludes that Evoke's wilderness program could plausibly qualify as a "facility" under both definitions. On the one hand, A.Z. alleges that Evoke was established to serve the particular purpose of providing treatment to children suffering from various conditions, including

depression. *See, e.g.*, Amended Complaint at ¶¶ 1, 3, 19–21.[7]  On the other hand, the Amended Complaint alleges that the Evoke wilderness program is "something" that makes the treatment of mental health disorders in children easier.  The Court disagrees with Defendants' myopic view of what a "wilderness program" is and, for purposes of resolving the instant Motion, concludes that A.Z. has plausibly alleged that Evoke is a facility within the definition of Residential Care.[8]

Finally, the Court is satisfied that it is at least plausible that Evoke was "licensed for the particular level of care for which the reimbursement is being sought."  Plan at Regence 0041.  The Claim Forms attached to the Amended Complaint as Exhibit 11 show that Evoke sought reimbursement for "PSYCH-OUTDOOR B/H PROGRAM" using billing code "1001."  *See* Amended Complaint, Exhibit F (Evoke Claim Forms). This description aligns with the level of care that Evoke is authorized to provide under its license issued by the State of Oregon.  *See* ORS 418.205(6)(a).

Ignoring the description Evoke used in seeking reimbursement, Defendants argue that Evoke improperly sought reimbursement using the "1001" code, which should be reserved for "residential treatment."  Motion at 11; Reply at 5–6.  Defendants conclude that because Evoke was not licensed to provide residential treatment, it sought reimbursement for a level of care that it was not licensed to provide.  *Id.*  Even if

---

[7] The same conclusion can be drawn by applying the Oxford Dictionary definition, which explains that a "facility" is "[a] place, amenity, or piece of equipment provided for a particular purpose."  Facility, <u>Oxford English Dictionary</u> (2nd ed. 1989).  The Amended Complaint adequately establishes that Evoke provides its wilderness program as a place where children can be treated for mental disorders.

[8] The Court therefore need not determine whether Evoke is a "residential facility."

Defendants are correct—an issue that is best left for the discovery phase of this litigation—the competing inference, if any, created by Evoke's use of the "1001" code must be resolved against Defendants and in A.Z.'s favor.  Defendants' argument is therefore insufficient to warrant dismissal of A.Z.'s first and second claims.

Together, the Amended Complaint plausibly alleges that the Evoke wilderness program was an "organized program" and a "facility" licensed for the particular level of care for which reimbursement was sought.  Thus, the care that Evoke provided to A.Z. was "Residential Care" falling within the Plan's definition of "Mental Health Services." Because A.Z.'s depression is a "Mental Health Condition" under the Plan, the Court is satisfied that the treatment she received at the Evoke wilderness program is plausibly covered by the Plan.

**B.      Whether Evoke's wilderness program is excluded**

The Amended Complaint also alleges that Defendants improperly denied coverage by relying on the Plan's "Counseling in the Absence of Illness" exclusion.  Amended Complaint at ¶¶ 1–4, 44–53, 56, 59–62.  Defendants argue that A.Z. "fails to assert plausible assertions that the 'Counseling in the Absence of Illness' exclusion does not apply under the plain language of the Plan."  Motion at 11–12.  The Plan's Counseling in the Absence of Illness exclusion provides that:

> Services for counseling in the absence of illness, not expressly described in this plan as a Covered Service, will not be covered.  Examples of non-covered services:  educational, social, image, behavioral or recreational therapy; sensory movement groups; marathon group therapy; sensitivity training; Employee Assistance Program (EAP) services; [and] wilderness programs . . . .

*Id.* at Regence 0055.  Nowhere else in the Plan are wilderness or outdoor programs mentioned or referenced.

On its face, this exclusion only applies in the absence of illness not described in the Plan as Covered Service.  The Amended Complaint alleges that A.Z. was diagnosed with an illness (depression) and attended the wilderness program to treat that illness.  It makes no difference that the exclusion lists "wilderness programs" as an example of a non-covered service, as that example is only illustrative of situations where wilderness program services are rendered "in the absence of illness."[9]  These allegations are enough to plausibly establish that the Counseling in the Absence of Illness exclusion may not apply.[10]  The Court DENIES the Motion to dismiss the first and second claims on this basis.[11]

---

[9] To the extent the exclusion's reference to "wilderness programs" creates any ambiguity, such ambiguity must be resolved in A.Z.'s favor at this stage of the litigation.  *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 625 (9th Cir. 2007).

[10] Defendants suggest that "[i]t is within the grasp of a person of ordinary intelligence and experience to comprehend that the contract's exclusion of 'wilderness programs' would operate to exclude the Evoke wilderness program."  Motion at 12.  This argument ignores the question presented: whether Defendants improperly applied the exclusion in denying coverage to A.Z.  The Court finds that the Amended Complaint has adequately alleged coverage and that Defendants improperly denied coverage.

[11] Defendants also argue that A.Z. lacks standing to seek injunctive and declaratory relief under Section 1132(a)(1) because she cannot demonstrate a sufficient likelihood of future injury.  Motion at 22–24.  A.Z., on behalf of the putative class, seeks "a declaration of their rights to coverage of medically necessary mental health treatment in outdoor-wilderness behavioral programs without the application of Regence's blanket exclusions and limitations."  Amended Complaint at ¶ 88.  Consistent with this allegation, an ERISA beneficiary may bring a civil action to clarify her rights to future benefits under a plan and may do so without showing a threat of future harm.  *A.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *8 (W.D. Wash. June 5, 2018) (Coughenour, J.) (citing *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003)).  The Court declines to dismiss A.Z.'s first claim on this basis.

## C. Whether A.Z. has adequately pleaded Plan losses in support of her second claim for breach of fiduciary duties

Defendants also argue that the Court should dismiss Plaintiff's second claim for breach of fiduciary duties under 29 U.S.C. § 1132(a)(2) for failing to plead losses to the Plan. Motion at 21. A.Z.'s second claim for breach of fiduciary duties merely contains the conclusory allegation that A.Z. "seeks recovery on behalf of the Plan for its losses." A.Z. has not, however, offered any supporting allegations suggesting that the denial of coverage for wilderness programs has caused losses to the Plan itself. This allegation is therefore insufficient to state a claim for relief under 29 U.S.C. § 1132(a)(2). *A.H.*, 2018 WL 2684387, at *8–9 (concluding that a request for "non-monetary equitable relief" does not save this deficiency). For this reason, the Court DISMISSES Plaintiff's second claim with prejudice.[12]

## III. Parity Act Violation (Third and Fourth Claims)

Finding that the Amended Complaint plausibly alleges coverage under the Plan, the Court turns to A.Z.'s third and fourth claims. The gravamen of those claims is whether Defendants' alleged exclusion of benefits violated the Parity Act. Under the Parity Act, a group health plan must ensure that (1) the "treatment limitations" applicable to mental-health benefits are "no more restrictive than the predominate treatment limitations applied to substantially all medical and surgical benefits covered by the plan" and (2) "there are no separate treatment limitations that are applicable only with respect

---

[12] The Court dismissed A.Z.'s original version of this claim with leave to amend on the same basis. Plaintiff has failed to address this issue. *See* Complaint (Class Action), docket no. 1, at ¶¶ 28–35; docket no. 33.

to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). The

implementing regulations provide that a plan:

> may not impose a nonquantitative treatment limitation with respect to
> mental health . . . benefits in any classification unless, . . . any processes,
> strategies, evidentiary standards, or other factors used in applying the
> nonquantitative treatment limitation to mental health . . . benefits in the
> classification are comparable to, and are applied no more stringently than,
> the processes, strategies, evidentiary standards, or other factors used in
> applying the limitation with respect to medical surgical/benefits in the
> classification.

29 C.F.R. § 2590.712(c)(4)(i).[13] Nonquantitative treatment limitations may include

"restrictions based on . . . facility type." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

The pertinent inquiry is whether Defendants' refusal to cover "wilderness

programs" is an exclusion that applies equally to medical/surgical benefits and mental

health or substance use disorder benefits. The Amended Complaint alleges that Regence

"excludes coverage of outdoor/wilderness behavioral healthcare programs for mental

illnesses, even though it covers medical treatment provided in other types of intermediate

residential programs, such as skilled nursing care." Amended Complaint at ¶ 2. "While

Regence generally covers medical and surgical services when provided in intermediate

settings, it has a practice of excluding wilderness therapy – a form of intermediate

therapy to treat mental illnesses. This practice is alleged to occur even when exclusion is

not permitted by the Plan's terms." *Id.* at ¶ 67. The Amended Complaint alleges that

Regence has "imposed a nonquantitative treatment limitation – a blanket exclusion – on

---

[13] The regulations provide six classifications: inpatient, in-network; inpatient, out-of-network; outpatient, in-network; outpatient, out-of-network; emergency care; and prescription drugs. 29 C.F.R. § 2590.712(c)(2)(ii).

the scope of intermediate services it covers – medically necessary treatment at outdoor/wilderness behavioral healthcare programs – that is not in parity with the treatment limitations it imposes on comparable intermediate medical/surgical services, such as skilled nursing facilities and rehabilitation hospitals, which are expressly covered." *Id.* at ¶ 68.

Defendants argue that A.Z. has (1) misidentified the relevant exclusion by focusing on a "blanket exclusion" not found in the Plan; and (2) failed to allege the relevant "processes, strategies, evidentiary standards, or other factors" Regence employed in deciding to exclude wilderness programs. Motion at 14–19. In making these arguments, Defendants rely heavily on *Welp v. Cigna Health & Life Ins. Co.*, No. 17-cv-80237, 2017 WL 3263138 (S.D. Fla. July 20, 2017). Motion at 13–18; Reply at 8–10.[14] Since completing their briefing, both parties have submitted notices of supplemental authority that provide the Court with additional guidance.

### A. *Welp* does not resolve whether the Amended Complaint sufficiently alleges a Parity Act violation

In *Welp*, the court granted the plan administrator defendants' motion to dismiss a complaint for failure to allege a Parity Act violation. 2017 WL 3263138, at *1–3. The plan at issue covered treatment at a "Psychiatric Residential Treatment Facility" or "PRTF," but excluded coverage for all wilderness programs. *Id.* at *2. Defendants relied on this exclusion in denying coverage to plaintiff's son, who had suffered from various mental health issues and attended a therapeutic wilderness program in Utah. *Id.*

---

[14] The Court also relied on *Welp* in dismissing A.Z.'s original complaint. *See* docket no. 33.

The *Welp* plaintiff alleged that "the Plan's terms impermissibly create[d] a separate and non-quantitative limitation on specific mental health benefits" in violation of the Parity Act. *Id.* at *4. The *Welp* court rejected the plaintiff's argument that the defendants maintained a "blanket exclusion for services at wilderness treatment centers." Construing the plan documents, the court concluded that the defendants properly applied the plan's criteria for determining whether a program is covered. Specifically, the court noted that the reasons defendants gave in denying coverage—including the program's lack of a multidisciplinary team and consistent supervision of professionals—were legitimate criteria listed in the plan and qualified as non-quantitative treatment limitations under the Parity Act. *Id.* at *5. In drawing this conclusion, the court reasoned as follows:

> the denial of coverage for a requested benefit pursuant to a limitation is not the same thing as an *ex ante* limitation prohibiting coverage for that benefit. To properly plead a Parity Act violation resulting from the denial of the wilderness program's coverage, the first thing Plaintiff must do is correctly identify the relevant limitation—here, the distinction between qualifying and non-qualifying PRTFs. . . . Alternatively, Plaintiff might simply allege that [the wilderness program] did meet the PRTF criteria.

*Id.* at *5 & n.8. The *Welp* court thus identified two possible ways to allege a Parity Act violation. A claimant can allege that she was denied coverage pursuant to a limitation, but must correctly identify that limitation and compare it to a relevant analogue. *Id.* at *5–6 (finding that the plaintiff did not meet this standard). In addition, a claimant can also allege that a wilderness program met the plan's criteria in situations "where the individual program in question confounds the categorical distinctions." *Id.* at *5, n.8. Thus, if a claimant's wilderness program treatment satisfies the limitations imposed in the claimant's plan, she might still be entitled to proceed to the merits of her claim to

ORDER - 16

determine (1) what *other* limitations, if any, the defendant imposed in denying coverage; and (2) whether those limitations violate the Parity Act.

Here, A.Z. alleges both theories identified by the court in *Welp*. Although she alleges that the face of the Plan impermissibly excludes wilderness programs in violation of the Parity Act, she also alleges that the wilderness program satisfied all criteria for coverage under the Plan. In contrast to the pertinent plan provisions at issue in *Welp* that excluded *all* wilderness programs that did not qualify as PRTFs, the Plan here merely lists wilderness programs as an example of an excluded service that would not be covered "in the absence of illness." Without specifying any criteria that could be analogized to the pertinent non-quantitative treatment limitations articulated in the Parity Act, Defendants explained that, under their interpretation of the Plan, wilderness programs are not covered. For example, in their October 17, 2016 denial letter, Defendants stated that "this is not a determination of medical necessity; rather, it is a limitation of your health care contract." Amended Complaint, Exhibit D.

Because the Amended Complaint alleges that the Plan covers the services A.Z. received at the Evoke wilderness program, *Welp* does not control the outcome of this case. To the contrary, the *Welp* court tailored its decision to the specific terms of the plan at issue and left open the possibility of alternative avenues for pleading a Parity Act violation. On its face, the decision carefully avoids answering whether a complaint alleging that a wilderness program met the criteria for coverage under a plan is sufficient to state a Parity Act claim. 2017 WL 3263138, at *5, n.8.

**B.    The post-*Welp* case law expands on the pleading criteria identified in *Welp***

A handful of decisions after *Welp* further guide the Court's analysis of this issue. In *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155 (9th Cir. 2018), the Ninth Circuit reversed the trial court's dismissal of a Parity Act claim. *Id.* at 1160. In reaching this conclusion, the panel confirmed that the Parity Act mandates that mental health benefits be "'no more restrictive' than those for medical and surgical problems." *Id.* at 1158. The Court explained as follows:

> However, unsurprisingly, it does not specifically address the precise scope of the Parity Act provisions for the myriad . . . situations that might arise. That leaves room for interpretation. Put otherwise, it has necessarily left some room for uncertainty or ambiguity regarding its application to specific ERISA plan terms and situations.

*Id.* The Court proceeded to interpret the Parity Act to conclude that a defendant is precluded from *deciding* to improperly restrict treatment for mental health patients. *Id.* In reversing the district court's decision to the contrary, the Ninth Circuit noted that "[w]ere it otherwise, the lack of equity that the Parity Act was designed to repress would have become renascent." *Id.* at 1160. *Danny P* reaffirms the importance of conducting a case-by-case inquiry in deciding whether a Parity Act claim has adequately been plead.

Two newer decisions specifically considered whether the denial of "wilderness program" coverage violated the Parity Act. In *A.H.*, the plaintiff argued that defendants' blanket exclusion for wilderness programs violated the Parity Act because it imposed stricter limitations on mental health and substance abuse treatment than it did for medical and surgical care. *A.H.*, 2018 WL 2684387, at *5–6. The Court rejected this argument and found that the plaintiff had not stated a plausible Parity Act violation. *Id.* at *7. The

Court reasoned that although the plaintiff had characterized the exclusion to apply to "wilderness *behavioral healthcare* programs," the Plan itself was not that specific. *Id.*[15] Instead, the Court construed the Plan and determined that the wilderness program exclusion applied equally to all medical benefits. *Id.* Because the plaintiff did not point to anything in the Plan or the administrative record demonstrating that the wilderness program only applied to mental health treatment, the *A.H.* Court dismissed the Parity Act claim. *Id.*

More recently, the United States District Court for the District of Massachusetts reached a different conclusion. In *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-cv-10844-DJC, 2018 WL 3518511 (D. Mass. July 20, 2018), the court denied a motion to dismiss plaintiffs' Parity Act claim. The plaintiffs in *Vorpahl* alleged that the defendant violated the Parity Act by covering "medical/surgical benefits provided in other inpatient treatment settings, such as rehabilitation hospitals and skilled nursing facilities," but did not cover "wilderness programs," which plaintiffs argued were equivalent intermediate treatment settings. *Id.* at *3. The complaint in *Vorpahl* specifically alleged that defendant "applies a blanket exclusion . . . for all mental health services provided by outdoor/wilderness healthcare programs, without exception . . . [y]et . . . pays for the treatment of medical conditions in other types of residential programs, such as skilled nursing care and rehabilitation hospitals." *Id.*

---

[15] Unlike the exclusion at issue in this case, the exclusion in *A.H.* expressly excluded coverage for "educational or recreational therapy programs; this includes, but is not limited to boarding schools and wilderness programs . . . ." *Id.* at *4.

The *Vorpahl* court found these allegations sufficient to state a Parity Act claim: "Although it may be a 'close call,' it appears sufficient to allege, as Plaintiffs have, 'that a mental-health treatment is categorically excluded while a corresponding medical treatment is not' to state a Parity Act claim." *Id.* (quoting *Bushell v. Unitedhealth Grp. Inc.*, 17-cv-2021-JPO, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018)).[16] Importantly, the *Vorpahl* court rejected the defendant's argument that the complaint failed to allege enough facts to establish that the wilderness program exclusion applied equally to medical and surgical care: "Such a contention . . . appears to concern the process and factors by which such nonquantitative treatment limitation could even be applied both to mental health benefits and medical/surgical benefits, a contention that needs to be resolved as the case proceeds after the benefit of discovery." *Id.* at *3–4 (citing *Natalie V.*, 2016 WL 4765709, at *1, 8; *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL1270433, at *1, 10 (N.D. Ill. Mar. 31, 2016)). The *Vorpahl* court concluded that "[t]o the extent the Plaintiffs contend that the wilderness exclusion differentially treats medical/surgical benefits and mental health benefits in application rather than by its terms, . . . the complaint, read in the light most favorably to Plaintiffs, also suggests that [defendant] differentially applies a facially neutral plan term." *Id.* at *4.

---

[16] The court in *Bushell* also referred to this issue as a "close call," but concluded that the complaint adequately alleged a Parity Act violation at the motion to dismiss stage. *Bushell*, 2018 WL 1578167, at *6.

Although the courts seemed to have reached different outcomes, the holdings in *A.H.* and *Vorpahl* are not at odds—and align with the framework identified in *Welp*. These cases demonstrate that a plaintiff alleging a facial Parity Act violation must properly identify, either in the terms of the plan or the administrative record, the relevant treatment limitation supporting that charge. *A.H.*, 2018 WL 2684387, at *7; *Vorpahl*, 2018 WL 3518511, at *2–3 (analyzing the text of the exclusion); *see also Welp*, 2017 WL 3263138, at *6. To be sure, a claimant cannot mount a facial Parity Act attack out of thin air—she must properly identify the allegedly violative limitation. *Vorpahl*, however, holds that it is enough to allege a "categorical" mental-health exclusion without specifying the processes and factors used by a defendant to apply that exclusion—facts that would be solely within a defendant's possession at this stage in the litigation. *Vorpahl*, 2018 WL 3518511, at *3; *see also Welp*, 2017 WL 3263138, at *5, n.8.[17] Moreover, *Vorpahl* holds that a plaintiff may, in the alternative, allege an impermissible mental-health exclusion "in application"—as opposed to a facial attack relying solely on the terms of the plan at issue. *Vorpahl*, 2018 WL 3518511, at *4.

### C. A.Z. sufficiently pleads both "categorical" and "as applied" Parity Act violations

A.Z. mounts a facial attack by relying on the terms of the Plan; disputes Defendants' categorical denial of wilderness program benefits; and challenges Defendants' practice of excluding wilderness programs—independent of the terms of the

---

[17] For this reason, the Court finds Defendants' "cross-walking" argument unpersuasive. *See* Motion at 17–18.

Plan. She succeeds on her second and third theories. On its face, the Plan does not violate the Parity Act because its terms are neutral. *A.H.*, 2018 WL 2684387, at *7; *Welp*, 2017 WL 3263138, at *5–7. But this does not end the Court's inquiry. A.Z. also alleges that Regence has categorically denied, in practice, coverage for medically necessary services at outdoor/wilderness behavioral healthcare programs. Amended Complaint at ¶ 99. Such a categorical exclusion is itself a form of "process" falling within 29 C.F.R. § 2590.712(c)(4)(i) that qualifies as a discriminatory limitation. *See Bushell*, 2018 WL 1578167, at *6; *Vorpahl*, 2018 WL 3518511, at *3. Drawing all reasonable inferences in A.Z.'s favor, this is enough to state a Parity Act violation for purposes of resisting a motion to dismiss. This makes sense, as requiring A.Z. to specify the exact process by which Defendants reached their decision on outdoor/wilderness behavioral healthcare programs "would likely create a serious obstacle" to an otherwise meritorious Parity Act claim. *Bushell*, 2018 WL 1578167, at *6.

Likewise, A.Z. alleges that "[w]hile Regence generally covers medical and surgical services when provided in intermediate settings, it has a practice of excluding wilderness therapy – a form of intermediate therapy to treat mental illnesses. **This practice occurs even when exclusion is not permitted by the plan**." Amended Complaint at ¶ 67 (emphasis added). Put differently, A.Z. contends that the improper exclusion occurs in application rather than by the Plan's terms. These allegations are also a sufficient, independent basis to allege a Parity Act claim, *see Vorpahl*, 2018 WL 3518511, at *4. Reading these allegations and the Amended Complaint in a light most favorable to A.Z., as the Court must do on a motion to dismiss, the Court concludes the

allegations that Defendants disparately apply an otherwise "facially neutral plan term" are sufficient for purposes of withstanding dismissal at the pleadings stage. *Id.*

In sum, the Court concludes that A.Z. has met the applicable pleading standards in stating a Parity Act violation. This conclusion furthers the equitable concerns articulated by the Ninth Circuit in *Danny P.* and allows A.Z. to develop her legal theories on the merits. *Danny P.*, 891 F.3d at 1160. This case should proceed to the discovery phase and A.Z. should be permitted to test the processes Defendants employ in denying coverage for outdoor/wilderness behavioral healthcare programs and whether such disparate application of the "Counseling in the Absence of Illness" exclusion in fact exists. The Court DENIES the Motion's request to dismiss claims three and four for failure to allege a Parity Act violation.

## IV. ACA Violation (Third and Fourth Claims)

A.Z. further alleges that Regence's application of the "Counseling in the Absence of Illness" exclusion violates the provider non-discrimination provision of the ACA. Amended Complaint at ¶¶ 3, 70, 98, 102. A.Z. relies on 42 U.S.C. § 300gg-5(a), which provides that "a group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law." Amended Complaint at ¶ 102. But Section 300gg-5 does not create a private right of action. *Vorpahl*, 2018 WL 3518511, at *5. As such, A.Z. is not entitled to any relief due to any

purported ACA violation.[18]  To the extent the third and fourth claims rely on an alleged

violation of the ACA, they are DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Defendants' motion to dismiss A.Z.'s first claim is DENIED.

(2)    Defendants' motion to dismiss A.Z.'s second claim is GRANTED.  A.Z.'s

second claim is DISMISSED with prejudice.

(3)    Defendants' motion to dismiss A.Z.'s third and fourth claims is DENIED.

(4)    The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 9th day of August, 2018.


Thomas S. Zilly
United States District Judge

---

[18] A.Z. argues "that her treatment was an otherwise covered service that was excluded because it was provided by [a] provider whose license permitted it to offer services in the wilderness."  Opposition at 21–22.  The Court rejects this argument, as the ACA's anti-discrimination provision does not require a plan to provide coverage for any treatment simply because it is rendered by a state-licensed provider. *A.H.*, 2018 WL 2684387, at *8.

ORDER - 24